### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 10-10310-WGY |
| | ) | |
| RODNEY GURLEY, | ) | |
|     Defendant | ) | |

### GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

At the defendant's initial sentencing hearing, the Court asked the parties to brief two related questions concerning the applicability of a ten-year mandatory minimum sentence in this case. Specifically, the Court asked:

1. In discharging its duty under <u>Harris v. United States</u> to decide whether a mandatory minimum sentence applies in this case, what kind of evidence can the Court rely on? Should the Court rely only on evidence introduced at trial, or can the Court also rely on the information contained in the Pre-Sentence report?

2. Given the difference between the Court's calculation of the defendant's guideline sentencing range and the proposed mandatory minimum sentence, what evidentiary standard should the Court apply: fair preponderance, or beyond a reasonable doubt?

In this case, the evidence from the trial and the information contained in the PSR are for all practical purposes identical (indeed, there were no factual objections by the defendant to the offense conduct in the PSR). However, the Court must decide the mandatory minimum sentence by a fair preponderance of the evidence. <u>See</u> <u>United States v. Malouf</u>, 466 F.3d 21 (1st Cir. 2006). Here, the evidence at trial was more than sufficient to conclude that all of the drugs seized from the

defendant's stash house are attributable to him.  Thus, the defendant is subject to a ten-year mandatory minimum sentence.

## I.   <u>PROCEDURAL HISTORY</u>

On September 30, 2010, the United States Grand Jury for the District of Massachusetts returned an indictment charging the defendant possessed with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Pursuant to 21 U.S.C. § 851, the government notified the defendant that he had been charged with committing these offenses after having been previously convicted of a felony drug offense.

Trial commenced on July 18, 2011 before this Court and a jury.  On July 21, 2011, the jury began its deliberations.  The verdict slip asked the jury to determine whether the defendant was guilty or not guilty, and, if guilty, "does the amount of crack cocaine properly attributable to Rodney Gurley exceed 28 grams."  On July 22, 2011, the jury returned a verdict of guilty.  On the question of whether more than 28 grams of crack was attributable to the defendant, the jury answered, "No."

## II.   <u>THE INITIAL SENTENCING HEARING AND THE CALCULATION OF THE DEFENDANT'S SENTENCING GUIDELINES</u>

The Court began the defendant's November 10, 2011 sentencing hearing (the "November Hearing") by calculating the top of the sentencing guidelines, or, as the Court put it, the "top of the constitutionally available sentence absent [a] mandatory minimum."  November Hearing at 6.  Determining the top of the

guideline sentencing range required determining the amount of cocaine base attributable to the defendant.[1]  The United States Probation Office found that all of the cocaine base found in 10-12 Walnut Street (32.02 grams) was reasonably attributable to the defendant, leading to a base offense level of 26.  PSR, ¶27.  The government agreed with Probation's calculation of the base offense level.  See Government's Sentencing Memorandum at 4.

The Court disagreed.  Since in its view "all enhancements [must be] put to the jury to proof beyond a reasonable doubt,"[2] and since the jury had not found over 28 grams of cocaine base attributable to the defendant, the Court concluded that the defendant's offense level had to be below the offense level for 28 grams of cocaine base.  November Hearing at 6-7.  The Court then examined what was recovered from the defendant's room.  From a night stand next to the bed were the defendant was found, agents seized a chunk of crack cocaine weighing 4.29 grams. November Hearing at 12-13.  Agents also seized two bags of crack cocaine in plain view on top of a dresser:  one bag contained 13.42 grams of crack, the other weighed 13.55 grams of crack.

---

[1] United States Probation, the government, and the defendant all agree with the Court that the defendant is in Criminal History Category II.  See November Hearing at 17.

[2] See United States v. Kandirakis, 441 F. Supp. 2d 282, 318-319 (D. Mass. 2006), referenced at the November Hearing at pp. 8-9.  However, in Kandirakis, the Court applied a preponderance of the evidence standard.  Id. at 320 and 335.

Id. at 12-13.  The bags containing the 26 grams of crack were next to each other on the dresser and a step or two away from the bed (where the defendant was found) and the night stand (where the 4.29 grams of crack was found).  Nevertheless, the Court found that the "principal of lenity" required that he not count the 26 grams found on the dresser against the defendant, since doing so would put the amount attributable to him over 28 grams and thus violate the jury's special verdict slip.  Id. at 15.

The Court concluded that, in light of the jury's finding, it was compelled to attribute only the 4.29 grams of crack cocaine from the night stand to the defendant.  Id.  The base offense level for 4.29 grams of crack cocaine is 16.  Id. at 17.  The Court found that the defendant's guideline sentencing range was 24-30 months, and, in the Court's parlance, the "top constitutionally available sentence" was 30 months.  Id.[3]

## III. **THE HARRIS INQUIRY**

The Court recognized that, under Harris v. United States,

---

[3] Like the drug weight, the Court rejected Probation's application of a two-level enhancement for use of a dangerous weapon (a knife) during the defendant's commission of the offense, see U.S.S.G. § 2D1.1(b)(1), and rejected the government's request for an additional two-level role enhancement as a leader, see U.S.S.G. §3B1.1(c), because these enhancements were not submitted to the jury: "My practice is uniform.  It is well-known.  You know it.  Your office knows it.  And if you had wanted a more detailed verdict slip it was up to you to ask for one.  You haven't."  November Hearing at 9.  The government objected to the Court's calculation of the offense level and its rejection of both guideline enhancements.  Id. at 15 & 19-20.

536 U.S. 545 (2002), it was required to determine whether the
mandatory minimum applied in this case:

> But, where there's a mandatory minimum, that's provided
> by the Congress and that's been interpreted by <u>Harris</u>
> and many other cases, but <u>Harris</u> is the touchstone here
> and the case that we must all follow, I don't, I don't
> see that my approach can in any way infringe upon my
> duty under <u>Harris</u>.  And I think I am to that extent
> absolutely bound by <u>Harris</u>.  And so, it seems to me
> that the issue of mandatory minimum, however – well,
> who cares what I think – the issue of the mandatory
> minimum is before me.

November Hearing at 21.

The Court had questions about how to conduct the <u>Harris</u>

inquiry:

> <u>Harris</u> preceded the revolution in our law of
> confrontation.  And if it's going to be the mandatory
> minimum that drives the sentence in this case then I
> would think that I am not permitted, although the
> guideline statute would permit me, I am not permitted
> to take the presentence report as data on which I can
> base the sentence.  Now, that isn't too big a problem
> here, because this isn't a plea and I would have sorted
> all this out had it been a plea.  I've got a full trial
> record here.  And that is all evidence.  It's all
> evidence before me.
>
> The second thing I think, tentatively, is that I must
> make my finding, because I've got a trial here, I can
> make findings, I think my finding must be beyond a
> reasonable doubt.  This is the conclusion Judge Gertner
> reached in <u>United States v. Malouf</u> and she was revered.
> I have that very much in mind.  The First Circuit says
> no, it's a fair preponderance.  And I am equally bound
> by the First Circuit and intend no – I am bound.  I
> cannot vary that.  They say fair preponderance.  Except
> their case, <u>Malouf</u> – I am aided, Mr. Pohl, by your
> thorough brief which bring all of these things back to
> mind – is post-<u>Booker</u>.  Is post-<u>Booker</u>.  But what makes
> this different is, I wouldn't have any problem in
> essence being fully bound and that's why I've
> approached it this way.  I do try to be transparent.

> If these guidelines came out somewhere, the
> constitutional maximum was anywhere above 120 months, I
> would have no issue.  But I am faced with a situation
> where the sentence here, if it doesn't apply, I should
> hear counsel, but le me, let me say straight out, the
> likely sentence is 30 months, if it doesn't apply, or
> it must be ten years if it does apply.  That's a very
> significant difference.  In those unique circumstances
> it seems to be I should be held to proof beyond a
> reasonable doubt.

Id. at 22.  The Court then asked the parties to brief the

questions set forth above.

**IV.  ARGUMENT**

As was noted in the government's original sentencing

memorandum, the quantity of drugs which establishes the maximum

term of imprisonment is determined by the jury.  See, e.g.,

United States v. Gonzalez-Valez, 466 F.3d 27 (1st Cir. 2006)

("the maximum statutory penalty available to the district court

at sentencing for a defendant convicted of a drug conspiracy is

based on the drug quantity and amount reflected in the jury

verdict attributable to the conspiracy as a whole"); United

States v. Soto-Benquez, 356 F.3d 1, 46 (1st Cir. 2004) ("the

conspiracy-wide drug quantity determines the statutory maximum");

Derman v. United States, 298 F.3d 34, 43 (1st Cir. 2002).  In

this case, the maximum charge applicable to the Indictment is

thirty years, given the language of 21 U.S.C. §841(b)(1)(C) and

the § 851 Information filed by the government.

By contrast, the determination of sentencing factors – such

as the mandatory minimum sentence here – must be made by the

6

Court based on facts found by a preponderance of the evidence. In <u>McMillan v. Pennsylvania</u>, the Supreme Court upheld a statute that allowed a sentencing judge to find, by a preponderance of the evidence, a fact that increased the minimum penalty for a crime.  477 U.S. 79, 79 (1986).  The Pennsylvania statute subjected anyone convicted of a specified felony to a mandatory minimum 5-year sentence if the trial judge found, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of the offense.  <u>Id.</u> at 82.  The Court distinguished between offense elements, which must be proved beyond a reasonable doubt, and sentencing factors, which may be proved by a preponderance of the evidence.  <u>Id.</u> at 91.  <u>See also</u> <u>Jones v. United States</u>, 526 U.S. 227, 248 (1999) ("It is not, of course, that anyone today would claim that every fact with a bearing on sentencing must be found by a jury; we have resolved that general issue and have no intention of questioning its resolution").

    In <u>Harris v. United States</u>, the Court affirmed a lower court's imposition of a seven year mandatory minimum sentence based on a judicial finding that the defendant had "brandished" a firearm.  536 U.S. 545, 545-546 (2002).  In rejecting the defendant's contention that the statute was unconstitutional after <u>Apprendi v. New Jersey</u>, 530 U.S. 446 (2000), the Court held:

7

> Whether chosen by the judge or the legislature, the
> facts guiding judicial discretion below the statutory
> maximum need not be alleged in the indictment,
> submitted to the jury, or proved beyond a reasonable
> doubt.  When a judge sentences the defendant to a
> mandatory minimum, no less than when the judge chooses
> a sentence within the range, the grand and petit juries
> already have found all the facts necessary to authorize
> the Government to impose the sentence.  The judge may
> impose the minimum, the maximum, or any other sentence
> within the range without seeking further authorization
> from those juries – and without contradicting Apprendi.

Id. at 565.  See also United States v. Malouf, 466 F.3d 21 (1st

Cir. 2006) (in reversing district court judge who found that drug

quantity and mandatory minimum sentence must be found by jury

beyond a reasonable doubt, Court ruled: "Harris remains good law

after Blakely and Booker"); United States v. Lizardo, 445 F.3d

73, 90 (1st Cir. 2006) ("Booker left intact the Supreme Court's

precedent in Harris v. United States [] which allowed the use of

judicially found facts to increase a mandatory minimum sentence")

(internal citation omitted); United States v. Colon-Solis, 354

F.3d 101, 102-103 (1st Cir. 2004) ("when a district court

determines drug quantity for the purpose of sentencing a

defendant convicted of participating in a drug-trafficking

conspiracy, the court is required to make an individualized

finding as to drug amounts attributable to, or foreseeable by,

that defendant"); United States v. Goodine, 326 F.3d 26, 33 (1st

Cir. 2003) (though sentence was above defendant's guideline

range, Court approved 20 year sentence based on drug weight: "If

the disputed fact (here, drug quantity) influences the sentence,

but the resulting sentence is still below the default statutory
maximum, there is no Apprendi violation").

The Supreme Court recently discussed with approval the
difference between an element of the crime, which must be found
by a jury beyond a reasonable doubt, and a sentencing factor
found by a judge.  See United States v. O'Brien, 130 S. Ct. 2169,
2174 (2010) ("Sentencing factors, on the other hand, can be
proved to a judge at sentencing by a preponderance of the
evidence . . . [W]hile sentencing factors may guide or confine a
judge's discretion in sentencing an offender within the range
prescribed by statute, judge-found sentencing factors cannot
increase the maximum sentence a defendant might otherwise receive
based purely on the facts found by the jury") (internal citations
omitted).  This distinction was preserved over the vigorous
objection of two members of the Court.  See Stevens, J.,
concurring in the judgment ("McMillan and Harris should be
overruled, at least to the extent that they authorize judicial
factfinding on a preponderance of the evidence standard of facts
that expose[d] a defendant to [a] greater punishment that what is
otherwise legally prescribed Sentencing factors, on the other
hand, can be proved to a judge at sentencing by a preponderance
of the evidence.  Any such fact is the functional equivalent of
an element of the offense"), and Thomas, J., concurring in the
judgment ("If a sentencing fact either raises the floor or raises

the ceiling of the range of punishments to which a defendant is exposed," it is an element that should be decided by the jury) (internal citations omitted).

At the November hearing, the Court agreed it was bound by Harris but expressed an inclination to conduct the drug quantity inquiry by requiring the government to prove the relevant drug quantity beyond a reasonable doubt.  November Hearing at 21. This would clearly violate Harris.  When this Court refused to conclude that a defendant was responsible for more than 500 grams of cocaine because the jury left the drug quantity portion of the verdict form blank and "under Apprendi, a judge could not find a higher drug quantity on his own, by a mere preponderance of the evidence," the First Circuit reversed:

> [The District Court] could (and should) have found [the defendant] responsible for the amount of cocaine established by a preponderance of the evidence against him – though of course, the ultimate sentence may not exceed the statutory maximum of 20 years.

United States v. Yeje-Cabrera, 430 F.3d. 1, 21-23 (1st Cir. 2005).  The First Circuit also reversed another district court judge who attempted to apply the beyond a reasonable doubt standard to the question of attributing drug weight.  See Malouf, 466 F.3d at 26.

At the November Hearing, the Court suggested that the beyond a reasonable doubt standard might be appropriate in this case, despite Malouf, because of the significant difference between the

defendant's guideline range as calculated by the Court and the possible mandatory minimum sentence.  <u>See</u> November Hearing at 22. Simply put, there is nothing in <u>Harris</u> to support the view that a Court can choose between evidentiary standards depending on the "gap" between the guideline range and a mandatory minimum sentence.  Also, had the Court correctly calculated the defendant's sentencing guidelines at the November Hearing, using the appropriate preponderance standard, <u>see</u> <u>United States v. Rivera-Rivera</u>, 555 F.3d 277, 292-293 (1st Cir. 2009), there would be little if any "gap" between the two.  The defendant's guideline sentencing range would have been either 87-108 months, under Probation's calculation, <u>see</u> PSR, ¶111, or 108-135 months as calculated by the government.  <u>See</u> Government's Sentencing Memorandum at 8.

In this case, a fair preponderance of the evidence shows that the 32 grams of crack cocaine found in 10-12 Walnut Avenue was reasonably attributable to the defendant.  As was fully set forth (with no objection) in the Pre-Sentence Report ("PSR") and at the defendant's trial, in October and November, 2009, Detective Thomas Keating and other officers from the Brockton Police Department conducted an investigation into drug sales taking place in the first floor apartment of 10-12 Walnut Avenue, a multi-family home in Brockton.  PSR, ¶11.  Officers utilized a confidential informant to make several controlled purchases of

crack cocaine from a young skinny black teenager, approximately
5'10" tall, thin to medium build, whose street name was
"Righteous."  Id.  The CI contacted "Righteous" by calling a cell
phone, (617) 337-6246, and met "Righteous" in the area of 10-12
Walnut Avenue.  Id.  During the controlled purchases, officers
observed "Righteous" leave 10-12 Walnut Avenue or return to 10-12
Walnut Avenue.  Id.  After the last controlled purchase, officers
observed "Righteous" enter the first floor apartment at 10-12
Walnut Avenue.  Id.

On November 18, 2009, Brockton Police officers, assisted by
troopers from the Massachusetts State Police, executed the
warrant.  Id., ¶13.  When the officers entered the first floor
apartment, they found one person, the defendant, in a bedroom.
Id.  Massachusetts State Police Trooper Erik Telford and Brockton
Police Lieutenant Paul Bonanca advised the defendant of his
Miranda rights.  Id.  Officers searched the apartment pursuant to
the warrant.  Id.

From the defendant's small room, officers seized
individually wrapped bags of crack cocaine (weighing 32.02
grams), powder cocaine, fifteen oxycodone pills, and baggies
frequently used to package cocaine for street level distribution,
and $1500.  Id., ¶14.  Trooper Telford also seized two cellular
telephones located near the defendant on the bed.  Id.  When
Trooper Telford looked at the phones, he viewed texts which,

based on his experience, he recognized as drug-related messages, including "I need food" (a slang expression for drugs), "I'm waiting for you," "I'm outside," and "tic-tacs" (a slang expression for percocets). <u>Id.</u> Trooper Telford asked the defendant how much money was on the bureau next to the bed. <u>Id.</u>, ¶15. The defendant replied, "$1500," and told Trooper Telford the money was his. <u>Id.</u>

In addition to a significant quantity of crack cocaine, two cell phones, digital scales, and money, all strong evidence of an intent to distribute, officers found several items which tied the defendant to the bedroom and apartment. <u>Id.</u>, ¶16. Officers found several greeting cards in the bedroom where the defendant was seized. <u>Id.</u> Many of the cards were addressed, "To Rodney." <u>Id.</u> Others were addressed to "Hot" and "Hot Rod," street names used by the defendant. <u>Id.</u> Also found in the bedroom was a photograph of the defendant and Jose Gurley, the defendant's younger brother, who was murdered in a gang-involved shooting in 2007. <u>Id.</u> The photograph was captioned, "We were two and had but one heart." <u>Id.</u> A t-shirt with a photograph of Jose Gurley and the caption, "In Loving Memory of Jose Gurley, In Our Memories Forever, 2/28/90 - 7/21/07," was hung on the wall in the bedroom. <u>Id.</u>

"Righteous" was not at 10-12 Walnut Avenue when the search warrant was executed and has never been positively identified.

Id., ¶18.  However, Detective Keating subsequently obtained search warrants for the phones seized from the defendant.  Id. One of the phones seized from the defendant listed a contact number for "Boo Boo," with the cellular telephone number of (617) 337-6246, the same number used by the CI to contact "Righteous." Id.  Phone records for the two cell phones seized from the defendant and the cell phone number used by "Righteous" confirmed a high volume of calls (often several thousand calls per month) and a short average duration per call for each phone.  Id.  Phone records further reflected that the defendant and "Righteous" were in contact with one another over 1,000 times in the months leading up to the execution of the search warrant.  Id.

In short, at the time the search warrant was executed, the stash house was under the defendant's complete control.  He was found in a small bedroom where his clothes and many (intensely) personal items were present.  While other evidence was recovered elsewhere in the apartment, the crack cocaine, money, packaging materials, and cell phones with coded drug talk were all found in the defendant's room (the only habitable bedroom in the apartment).  The apartment contained no evidence of any other person living there, including the only other person with any connection to the apartment – "Righteous."  Instead, given the frequency with which the defendant and "Righteous" were in contact by phone and the officers observations on surveillance

(namely, that they only saw "Righteous"), the evidence showed that "Righteous," a young teenager, was the defendant's drug runner, while the defendant maintained control of the stash house and the drugs therein.  The evidence before the Court supports only one conclusion: the defendant was a significant drug dealer, and the 32.02 grams of crack cocaine found in the defendant's room should be attributed to him.

**V.    Conclusion**

For the reasons stated herein, the government respectfully requests that the Court find by a preponderance of the evidence that 30.02 grams of cocaine base was attributable to the defendant and that he is subject to a ten-year mandatory minimum sentence.  In addition, for the reasons stated in its original sentencing memorandum, the government requests that the Court sentence the defendant to 135 months, the high end of his correctly calculated sentencing guidelines.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   /s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 9, 2012.

<u>/s/ Christopher Pohl</u>
Christopher Pohl
Assistant U.S. Attorney