UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
UNITED STATES OF AMERICA,      )
                              )
               Plaintiff,      )      CRIMINAL ACTION
                              )      NO. 10-10310-WGY
          v.                   )
                              )
                              )
RODNEY GURLEY,                 )
                              )
               Defendant.      )
_____)
```

SENTENCING MEMORANDUM

YOUNG, D.J.                                    May 17, 2012

> **The Trial of all Crimes, except in Cases
> of Impeachment, shall be by Jury . . . .**
> **U.S. Const. art. III, § 2, cl. 3**

> **...nor shall any person be subject for the same offense
> to be twice put in jeopardy of life or limb; . . .**
> **U.S. Const. amend. V**

> **Any fact (other than a prior conviction) which is
> necessary to support a sentence exceeding the maximum
> authorized by the facts established by a plea of guilty
> or a jury verdict must be admitted by the defendant or
> proved to a jury beyond a reasonable doubt.**
> **United States v. Booker, 543 U.S. 220,
> 244 (2005) (Stevens, J.)**

The unique circumstances of the present case pose this

question: "When the parties agree to submit to the jury a factual

question central to the defendant's culpability and the defendant

secures a partial acquittal, may a judge then subject the

defendant to a second round of (judicial) fact finding?"  In light of the constitutional bedrock limned above, the answer would seem obvious.  It is not.

## I.   Background

### A.   The Necessity for This Memorandum

This memorandum is untimely.  This First Circuit rightly has criticized district court memoranda filed after the taking of an appeal as "run[ning] a risk of creating an unwelcome appearance of partisanship.  [The district court's] writing understandably may be viewed by the appealing party as a quasi-brief, filed as a way of defending the sentence against the appeal."  United States v. Martin, 520 F.3d 87, 97 (1st Cir. 2008).

I apologize.

Candidly, I had not anticipated the particular circumstances presented here during the preceding six years and consider them highly unusual if not anomalous.  As a result, this Court's ruling applied to the narrowest subset of cases.  For these reasons, I did not expect this appeal, and while in retrospect I ought have drafted and issued this memorandum before imposing sentence, to do so would have left the defendant languishing in more restrictive pre-sentence detention rather than turning him over to the Bureau of Prisons with its wider array of rehabilitative programs and services, and I thus determined that a prompt sentencing was in the best interests of justice.

Now the government has appealed, as is its undoubted right. If its pre-sentence memorandum, _see_ Gov't's Supplemental Sentencing Mem., ECF No. 75, is any indication, it seeks to use this case to mount a full scale assault on this Court's post-_Booker_ approach to sentencing. This raises the stakes considerably. It is appropriate, therefore, for this Court to demonstrate that its sentence in the present case prescinds from a long and heretofore unchallenged approach to fashioning fair and individualized sentences, that a great deal of thought and research went into this sentence before its imposition, and that it is the peculiar circumstances of this particular case that distinguish it from the mine run of mandatory minimum sentences.

**B.    Post-_Booker_ Sentencing**

Fully to comprehend the narrow question presented here, one first must understand how this Court generally addresses sentencing issues post-_Booker_. It is an understatement to say that _Booker_ worked a sea change in the law of federal sentencing. Douglas A. Berman & Paul J. Hofen, _A Look at Booker at Five_, Commentary, 22 Fed. Sent'g Rep. 77 (2009); Nancy Gertner, _What Yogi Berra Teaches About Post-Booker Sentencing_, 115 Yale L.J. Pocket Part 137 (2006); John C. Richter, _Déjà Vu All Over Again: How Post-Booker Sentencing Threatens Equal Justice Under the Law_, 20 Fed. Sent'g Rep. 340 (2008); Patrick Schepens, _Solomon's Choice: Severing the Mandatory Requirement of the Federal_

Sentencing Guidelines to Save a System Congress Never Intended,
26 Miss. C. L. Rev. 375 (2006-2007); Jeffery T. Ulmer & Michael
T. Light, The Stability of Case Processing and Sentencing Post-
Booker, 14 J. Gender Race & Just. 143 (2010); see also, Admin.
Office of the U.S. Courts, Report on the Impact of the Booker
Case on the Workload of the Federal Judiciary (2006); Steven G.
Kalar, Jane McClellan & Jon M. Sands, A Booker Advisory: Into the
Breyer Patch, 29 The Champion 8 (Mar. 2005).  Like my colleagues,
I struggled to harmonize the latitude I was afforded by Remedial
Booker, see 543 U.S. at 244-65, with the overarching
constitutional requirements of Constitutional Booker, see id. at
221-44.[1]

---

[1] My approach to harmonization was guided by three basic
principles I have always considered salutary in discharging my
judicial duties:

> The working judge is not and never has been a
> philosopher.  He has no coherent system, no
> problem solver for all seasons, to which he
> can straightaway refer the normative issues.
> Indeed, if he could envision such a system for
> himself, he would doubt that, as a judge, he
> was entitled to resort to it; he would think
> he must be less self-regarding.

The Honorable Benjamin Kaplan, Justice, Massachusetts
Supreme Judicial Court, Encounters with O.W. Holmes, Jr.,
96 Harv. L. Rev. 1828, 1849 (1983).

> A trial judge bears the unique obligation of
> providing the fairest possible trial, hearing,
> and decision.

Appellate courts set minimum requirements.  This is
where we start.  It is our special challenge to go much

The approach I ultimately adopted is explained fully in United States v. Kandirakis, 441 F. Supp. 2d 282 (D. Mass. 2006):

### A.   The Court's Initial Standing Procedure: "Blakely-izing" the Guidelines

At the initial criminal case management scheduling conference, the Court inquires of the government what, if any, enhancements it will seek should the defendant be convicted.  The Court then informs all parties that the government must prove such enhancements to the jury at the trial beyond a reasonable doubt pursuant to the Federal Rules of Evidence.  If, after deliberation, the jury finds the defendant guilty of the charged crime, it is also (on the same verdict form) asked whether the government has proven the Guidelines enhancement facts. The jury is instructed to use the same reasonable doubt standard as to these facts.  As a corollary, when taking a plea, the Court carefully reminds the defendant that he has a right to a jury trial on any disputed enhancement and that it is the policy of the Court still to confer the Guidelines' discount for a plea should the government fail to meet its burden of proof as to that enhancement.

---

further and conduct the fairest proceedings humanly possible.

> *As a District Judge, you possess within yourself a portion of the very sovereignty of the United States.  Above all, do no harm.*

Two ideas coexist here.  First, while our concept of justice requires us to declare the law faithfully and in keeping with the views of Congress and the appellate courts, frequently we must act interstitially without controlling law or precedent.  In such cases, our duty to construe the Constitution and the laws is identical to that owed by a Justice of the Supreme Court.  Second, in making judicial decisions, avoiding or minimizing harm is an appropriate guiding principle.

William G. Young, Vanishing Trials, Vanishing Juries, Vanishing Constitution, 40 Suffolk U. L. Rev. 67, 93-94 (2006).

In either event, the Court initially considered itself bound by the jury's findings.  The defendant may, of course, waive the proffered jury trial as to any enhancement, in which case a jury-waived trial as to the enhancement will follow the main jury trial or the plea. The burden of proof at such trial similarly was beyond a reasonable doubt upon a record of evidence admissible under the Federal Rules of Evidence.

There's nothing original about any of this.  It was (and remains) the logical response to <u>Blakely</u> [v. <u>Washington</u>, 542 U.S. 296 (2004)].

. . .

Then came Remedial <u>Booker</u>.

. . .

**B.    The Court's Present Standing Procedure (Revised to Accommodate Remedial <u>Booker</u>)**

. . .

In light of [the] controlling decisions, this Court revised its standard procedure in one critical respect: It is presently the responsibility of the <u>judge</u> to find the facts upon which any Guidelines enhancement rests. I do so.  All other aspects of the Court's procedure, however, have remained the same.  The jury is now relegated to an advisory capacity.  Its presence and involvement, of course, still focuses the evidentiary presentation and secures the fair, impartial, and fresh opinion of twelve ordinary Americans.  Its advice is of inestimable - but presently not controlling - value.

<u>Id.</u> at 318-20 (citations and footnotes omitted).

For more than six years, I have followed this approach to sentencing in every criminal case.  In every plea colloquey, I have explored whether the defendant actually admits to the facts

undergirding each sentencing enhancement, and in every trial the
government has stepped up and sought to prove to the jury each
sentencing enhancement by actual evidence beyond a reasonable
doubt.  In those few cases where a defendant has balked at
exposing the jury to evidence of a specific enhancement, e.g.,
loss calculations or organizer-leader role in the offense, I have
readily offered a jury-waived trial with the protections of proof
beyond a reasonable doubt upon actual evidence.  See, e.g.,
United States v. Thomas, Criminal Action No. 11-10172 (D. Mass.
2012); United States v. Gonsalves, Criminal Action No. 10-10398
(D. Mass. 2011).

     Without exception, the system has worked smoothly, fairly,
and well – until now.[2]  Most recently, see the report of this

---

     [2] The wisdom of genuinely evidence-based sentencing is
confirmed on a daily basis in this session of the Court.
Consider these recent cases:
     In United States v. Gonsalves, No. 10-10398, Gonsalves had
pleaded guilty, freely admitting the quantity of drugs in the
controlled buy as well as drugs in other uncharged buys.  Plea
Colloquy, Gonsalves, No. 10-10398 (May 10, 2011).  He adamantly
denied, however, that he had anything to do with other drugs
found in the car where he was arrested.  Id.  Accordingly, the
Court accepted his plea and, Gonsalves having waived his right to
a jury on this issue, scheduled an evidentiary hearing to precede
his sentencing on the issue of whether reasonably to attribute
the other drugs in the car to him.  See Docket Entry, Gonsalves,
No. 10-10398 (May 10, 2011).  Faced with the prospect of actually
having to prove the provenance of these drugs, the government
undertook a further investigation which revealed that, in fact,
Gonsalves had nothing to do with the drugs in the car.  See,
e.g., Sentencing Excerpt Tr. 3, Gonsalves, No. 10-10398, ECF No.
23-1 (Sept. 30, 2011).  The pre-sentence report had assigned a
level 26 for the drugs attributable to Gonsalves.  Given the
government's further investigation, this level fell to 18 and

Court in <u>United States</u> v. <u>Carrasquillo</u>, 818 F. Supp. 2d 385, 390

n.3 (D. Mass. 2011).[3]

---

Gonsalves was sentenced accordingly.  <u>See</u> Pre-Sentence Report 9,
<u>Gonsalves</u>, No. 10-10398 (July 12, 2011).
    In <u>United States</u> v. <u>Rago</u>, No. 08-10268, Rago was convicted
of criminal violations of the Taft-Hartley laws in that, inter
alia, he demanded or received unlawful labor payments.  <u>See</u>
Judgment in a Criminal Case 1, <u>Rago</u>, No. 08-10268, ECF No. 167.
The amount of such payments was committed to the jury, which
found Rago guilty of demanding or receiving $21,485.00 of such
payments.  <u>See</u> Pre-Sentence Report 5, <u>Rago</u>, No. 08-10268 (Sept.
26, 2011).  Nevertheless, the government persuaded the probation
officer to put the figure $230,900 in the pre-sentence report.
<u>Id.</u> at 8.  This resulted in a 12-level enhancement.  <u>Id.</u>  At
sentencing, the Court concluded that the jury figure was correct.
This resulted in a 4-level enhancement and Rago was sentenced
accordingly.  <u>See, e.g.</u>, Sentencing Excerpt Transcript, <u>Rago</u>, No.
08-10268, ECF No. 167-1 (Oct. 3, 2011).  The forfeiture mandatory
under the law dropped from $230,900 to $10,000.  <u>Id.</u> at 5.
    In <u>United States</u> v. <u>Thomas</u>, Criminal Action No. 11-10172,
the government proffered competent evidence of "loss" in excess
of $1,300,000 in a mortgage fraud scheme.  Ex. QA, QB.  Tested in
an adversary preceding, that loss winnowed down to $350,408.88.
Evidentiary Hr'g Tr. 35: 1-5, <u>Thomas</u>, No. 11-10172 (May 1, 2012)
(unpublished).  These findings will significantly alter the
advisory guideline calculation.  In fairness, the government
filed a motion on May 2, 2012, for limited reconsideration to add
back in the loss of $185,267.87 from a particular sale.  United
States' Mot. Limited Recons., <u>Thomas</u>, No. 11-10172, ECF No. 62.
Even if successful, the loss proved will be less than half the
government's claimed "loss."
    Absent a consistent commitment to actual fact-finding, this
Court simply does not have adequate confidence that its crucial
sentencing decisions are truly based in existential reality.
Many judges follow this same approach to evidence based
sentencing.  <u>See, e.g.</u>, <u>United States</u> v. <u>Dossie,</u> No. 11-Cr-237
(JG), 2012 WL 1086516, at *7 (E.D.N.Y. Mar. 30, 2012) (Gleeson,
J.).  They believe, as do I, that "these are basic tenets of due
process."  <u>Id.</u>

    [3] This Court denied Carrasquillo's habeas petition via a
margin notation, <u>see</u> Electronic Order, Criminal Action No. 06-
10284 (Mar. 31, 2010) (dismissing sua sponte Civil Action No. 10-
10490), and Carrasquillo appealed.  The First Circuit requested a
report by this Court explaining its reasoning, and ultimately

Indeed, it has been a source of pride that Justices Scalia and Thomas have expressly endorsed this approach. See Rita v. United States, 551 U.S. 338, 378 n.5 (2007) (Scalia, J., joined by Thomas, J., concurring in part, concurring in the judgment) ("At least one conscientious District Judge has decided to shoulder the burden of ascertaining what the maximum reasonable sentence is in each case based only on the verdict and appellate precedent, correctly concluding that this is the only way to eliminate Sixth Amendment problems after Cunningham v. California, 549 U.S. 270 [] (2007) . . . .") (citing United States v. Griffin, 494 F. Supp. 2d 1, 12-14 (D. Mass. 2007) (Young, J.)).[4]

Moreover, I have been gratified that the Supreme Court has now confirmed that imposing on the government a "proof beyond a reasonable doubt" standard as to the sentencing enhancements fits comfortably within the discretion of a district judge "to select a specific sentence within a defined range." Rita, 551 U.S. at 352-53 (citations and quotation omitted).

---

affirmed the order. Carrasquillo v. United States, No. 10-1489 (1st Cir. Feb. 9, 2012).

[4] Contra United States v. Fitch, 659 F.3d 788 (9th Cir. 2011). Fitch was criticized in Recent Case, 125 Harv. L. Rev. 1860 (2012) which goes on accurately to remark that this Court's procedure expecting "judges to contemplate, in each case, the maximum substantively reasonable sentence authorized by the jury verdict or guilty plea . . . [would be] potentially destabilizing." Id. at 1866. Precisely. U.S. Const. art. III, § 2, cl. 3.

Not the least of the benefits of relying on jury scrutiny of actual evidence is that the enhanced fact finding that results removes much of the tensions which led this Court to declare the mandatory guidelines unconstitutional as applied even before Blakely, 542 U.S. 296.  Compare United States v. Green, 389 F. Supp. 2d 29 (D. Mass. 2005) (railing against the oxymoronic mandatory guidelines), rev'd sub nom In re United States, 426 F.3d 1 (1st Cir. 2005), with United States v. West, 552 F. Supp. 2d 74 (D. Mass. 2008) (detailing the benefits of advisory guidelines).

On the most practical level, I have learned that guideline sentencing enhancements easily can be folded into the trial, jury instructions, and verdict slip in every criminal case.[5]  Not once in these six years has the government or the defendant appealed, challenging this Court's approach to sentencing, and the meticulous evidentiary record that necessarily undergirds jury involvement in all factual aspects of the case has fostered a transparency in sentencing that in turn has largely obviated the need to generate time consuming sentencing memoranda – until now.

---

[5] Respectfully, Justice Breyer's concern that "[h]ow would a jury measure loss in a security fraud case – a matter so complex," Booker, 543 U.S. at 255, seems not to be borne out in actual practice.  Jurors can readily understand the relevant concepts and apply them in specific cases.

Important as it may be to understand how this Court goes about sentencing generally, this case is <u>not</u> about determining enhancement under the advisory sentencing guidelines (although I sometimes conflate the two). It is, rather, about the applicability of a mandatory minimum sentence enacted by Congress - a statutory mandate this Court is sworn to obey. It is therefore necessary to say a preliminary word about the statutory framework.

**C.   The Statute - 21 U.S.C. § 841(b)**

The statute involved in this case contemplates three progressively higher sentencing ranges, each dependant upon the proof of additional facts. The first range - the "basic range" - requires proof of possession of crack cocaine with intent to distribute and that the defendant had previously been convicted of a felony drug crime. 21 U.S.C. § 841(b)(1)(C). It carries a statutory maximum sentence of thirty years and no minimum mandatory sentence. <u>Id.</u> The second range - the "quantity enhanced range" - requires proof of possession of 28 grams or more of crack cocaine with intent to distribute. <u>Id.</u> § 841(b)(1)(B). This second range carries a statutory maximum sentence of forty years and a minimum mandatory sentence of five years. <u>Id.</u> The third range - the "quantity-plus-felony range" - requires the same proof of possession of 28 or more grams of crack cocaine with intent to distribute, but also requires

11

demonstration that the defendant had previously been convicted of a felony drug crime.  Id.  This third statutory range carries a maximum sentence of life imprisonment and a minimum mandatory sentence of ten years.  Id.

A jury finding is of course necessary to trigger a sentence above the statutory maximum for the basic range.  This is the quintessence of the holding in Constitutional Booker, 543 U.S. at 244, and there can be no dispute about it.

Most circuits have followed the logic of Constitutional Booker to require a jury finding as to drug quantity[6] in order to move from the "basic range" to either the "quantity enhanced range" or the "quantity-plus-felony" range.  See, e.g., United States v. Gonzalez, 420 F.3d 111, 116, (2nd Cir. 2005) (Raggi, Sotomaier, Sack, JJ.).  The First Circuit does not, treating the minimum mandatory determination as wholly divorced from the statutory range in which it is found.  United States v. Goodine, 326 F.3d 26, 32-34 (1st Cir. 2003).

### D.   Prior Proceedings

The Brockton Police, investigating the suspected drug related activities of a fellow nicknamed "Righteous," secured a

---

[6] No additional jury finding is required as to the prior drug felony element necessary to trigger the third range as this is a matter as to which the defendant already had a chance for a jury trial.  See Almendarez-Torres v. United States, 523 U.S. 224, 239-47 (1998).

search warrant for an apartment located at 10-12 Walnut Avenue,

Brockton, Massachusetts.   Executing the warrant, the police did

not find Righteous but did find 32.02 grams of crack cocaine —

and Rodney Gurley ("Gurley").

Indicting Gurley for possession of crack cocaine with intent

to distribute, the government sought to hammer him into pleading

guilty by threatening to file an information pursuant to 21

U.S.C. § 851[7] that Gurley had previously been convicted in the

Brockton District Court of possession with intent to distribute a

Class B substance.   Already facing a serious state charge,[8]

Gurley had little to lose and would have none of it.   The

government duly filed the notice pursuant to 21 U.S.C. § 851.

---

[7] One of the most pernicious aspects of a federal criminal
justice system today devoted almost entirely to plea-bargaining
is 21 U.S.C. § 851, a Congressionally mandated form of fact
bargaining.   The third and highest statutory sentencing range is
triggered in part by the existence of a prior drug felony
conviction, an existential fact capable of such ready
determination that a court might take judicial notice of the
fact.   Fed. R. Evid. 201.   Nevertheless, pursuant to 21 U.S.C. §
851, a court need consider that fact only in fashioning a
guideline sentence.   It is for the executive to establish the
sentencing range by giving the court formal notice under 21
U.S.C. § 851.   There was a time when Congress, as the direct
voice of the people, rather jealously guarded its prerogative to
establish sentencing ranges.   Now, with criminal trials all but
gone, the imperative need to force pleas has caused Congress - in
the 28 U.S.C. § 851 context - to surrender its prerogative to the
President's agents.

[8] The Court understands Gurley is facing a charge of murder
in the Massachusetts Superior Court.   Conviction of either first
or second degree murder in the courts of the Commonwealth carries
a mandatory life sentence.   Mass Gen. Laws ch. 265, § 2.

Information, ECF. No. 12.  Therefore, if Gurley was found to possess 28 grams of crack cocaine or more, he would be subject to a statutory maximum of life imprisonment and a ten year mandatory minimum sentence.

The case proceeded to trial in July 2011, with Gurley's counsel developing the theme that Gurley had "just happened" to be in the apartment to walk a dog when the police initiated their search, and the government (effectively as it turned out) seeking to tie Gurley to the apartment as his place of residence.  The parties stipulated that 32.02 grams[9] of cocaine base had been found in the apartment during the search, 4.29 grams on a night stand near the bed and three packets of 13.42 grams, 13.55 grams, and .76 grams respectively on a dresser not far away.  Tr. Evidence Jury Charge Conference ("Tr. Evidence & Jury Charge Conference") 20:6-21:11, ECF No. 65.

Prior to closing arguments, the Court held a jury charge conference and inquired what enhancements, if any, the government sought.  Id. at 154:6-10.

The government responded: "[T]he law as it stands today is that possession with intent to distribute more than 28 . . . grams of cocaine base would be a five year mandatory minimum

---

[9] The parties also stipulated to an additional .37 grams of cocaine based substance which was not included in the 32.02 grams total by error.  See Tr. Evidence & Jury Charge Conference 21:20-25, ECF No. 65.

sentence."  Id. at 154:11-14.[10]   The Court therefore proposed

incorporating in the verdict slip a special question directly

addressing the drug quantity that would trigger a mandatory

minimum sentence:

> I propose to frame a verdict that reads like this: On
> the charge submitted to us, we find Rodney Gurley not
> guilty/guilty.  And then to put a question: Is the
> weight of the drugs attributed to Mr. Gurley more than
> 28 grams of crack cocaine.  That's how we've referred
> to it.  No/yes.  If yes, we'll know that they found
> the adequate weight; if no, I don't need to know how
> much because it wouldn't be an enhancement.

Id. at 156:2-10.  The government responded, "Correct."  Id. at

156:11.

This is a significant interchange.  The Court reasonably

understood the government to be agreeing that a jury verdict as

to drug quantity was necessary before the Court could impose a

mandatory minimum sentence.  Moreover, when the Court proposed a

special question calling for a direct jury determination of that

existential fact, the government answered, "Correct."[11]

---

[10] The Court assumes the government simply misspoke.  Having
already filed the information under 21 U.S.C. § 851, upon proof of
the requisite drug amount, the mandatory minimum sentence would
be ten years.

[11] Note that the special question called for the jury
directly to determine by unanimous vote a factual question
crucial to Gurley's culpability.  To this the government agreed
unequivocally.  For more than six years, it has been this Court's
practice to ask such direct questions.
    It was possible, of course, to frame a question directed to
this subject matter in a fashion more akin to the question of
guilt vel non.  See, e.g., "Has the government proved beyond a

Accordingly, with the approval of both the government, <u>id.</u>, and defense counsel, <u>id.</u> at 156:20-24, the final verdict slip read:

1.    On the charge of possession of crack cocaine with intent to distribute, we find Rodney Gurley:

_____ not guilty   _____ guilty

2.    Does the amount of crack cocaine properly attributable to Rodney Gurley exceed 28 grams?

_____ no   _____ yes

Jury Verdict, ECF No. 55.

Likewise, the Court instructed the jury as to Question 2, without objection from the government, in the following manner:

If your verdict is guilty on Question 1 then, and only then, do you consider Question 2. . . . If you think he's guilty, then I want to know the amount that you think he's guilty of.

Now, a stipulation, and they broke down by exhibit numbers of what the stuff was, they've stipulated that it was crack cocaine, and that's all you're considering, crack cocaine, not other drugs, and they stipulated as to where in the apartment and they stipulate as to how much. Well, the law asks me to, I need to know whether it's above 28 grams or not.  And that makes a difference.

. . . [T]he government has to prove beyond a reasonable doubt how much [crack cocaine] he was in knowing possession of, or reasonably understood was stashed there in that apartment.  They've got to prove that beyond a

_____

reasonable doubt that the quantity of crack cocaine properly attributable to Rodney Gurley equalled or exceeded 28 grams?"

16

reasonable doubt.  It could be all of it, and if it's all
of it then the stipulation is that's more than 28 grams.


        But you're the jury.  And if it's not all of it, but
it is some of it, then figure out the some and tell me
whether that's above 28 grams or not.


        If you're not satisfied it's above 28 grams your
answer to that question must be no.

Tr. Closing Args. Jury Instructions ("Tr. Jury Instructions")

60:17-61:17, ECF No. 66.

     The jury returned a verdict of guilty.  As to the second

question, however, whether the drug quantity attributable to

Gurley exceeded 28 grams, the jury answered "no."  Jury Verdict.

     On November 10, 2011, the Court held a hearing to determine

Gurley's sentence.  Hr'g ("Tr. Sentencing Hr'g"), ECF No. 68.

The government there completely reversed itself and argued for

the first time that the special question directed to the jury

regarding drug quantity impacted <u>only</u> the statutory maximum

sentence:

        [The Government]:  The enhancement - the question, the
        special verdict slip with the question the jury was asked
        to answer - impacts the potential maximum sentence that
        the defendant could get.  Okay?  That is a wholly
        separate question now from the question, which is a
        guidelines question, not an enhancement question, of what
        is the reasonable amount of drugs that is reasonably
        attributable to him.


        The Court: That's the question, though, we asked the
        jury, wasn't it?

[The Government]: No.  I don't - well, it's a . . . - we
asked the jury the question for a particular purpose and
they answered it.  We're now asking a similar question
for a different purpose.

Tr. Sentencing Hr'g 7:21-8:9.  The government contended that the
special question was asked to the jury for the particular purpose
of determining the applicable statutory maximum.  Id.  Yet not
only did the government fail to mention at the jury charge
conference the effect of the 28 gram determination on the
statutory maximum, but the government also explicitly asserted
that the question's purpose was to ascertain whether the
mandatory minimum sentence applied.  Tr. Evidence & Jury Charge
Conference 154:11-14 ("[T]he law as it stands today is that
possession with intent to distribute more than 28 . . . grams of
cocaine base would be a five year mandatory minimum sentence.");
id. at 154:25-155:5 ("[The Government: Gurley is] still facing a
mandatory minimum sentence.  The Court: If they find that it's
over -. [The Government]: Twenty-eight grams.  The Court: - 28
grams. [The Government]: Yes.").

       District judges, of course, do not always put facts
determining mandatory minimums to the jury.  Nor has any case
required judges to do so.  In fact, most of the cases implicating
mandatory minimums arise when a defendant pleads guilty.  E.g.,
United States v. Colon, 391 F. App'x 890 (1st Cir. 2010); cf.
United States v. Picanso, 333 F.3d 21 (1st Cir. 2003).  Implicit

18

in the case law is the notion that, while not mandatory, district judges may put sentencing "enhancements" to the jury if they deem it proper.  Here, this Court chose to do so given the significance of drug quantity both to the mandatory minimum <u>and</u> maximum sentence.  <u>Cf.</u> <u>United States</u> v. <u>Garrasteguy</u>, 559 F.3d 34, 36, 44 (1st Cir. 2008) (affirming sentence where defendants pleaded guilty to distribution of cocaine base and this Court reserved the issue of drug quantity for a jury trial).

As acknowledged by the government at the jury charge conference the drug quantity in this case controlled the sentencing range applicable to Gurley.  Tr. Evidence & Jury Charge Conference 154:11-14, 156:11.  Both the proposed mandatory maximum and mandatory minimum would have (and did have) an enormous impact on the length of Gurley's sentence.  For this reason, the Court discussed the mandatory minimum with both parties, and all parties agreed to put the drug quantity question to the jury for a determination of the mandatory minimum.  <u>Id.</u> at 154:11-14, 156:2-11, 156:20-24.

The Court's procedure, as explained fully in <u>Kandirakis</u>, requires the government to prove to the jury beyond a reasonable doubt each Sentencing Guidelines enhancement that the government will seek to include in the Sentencing Guidelines range calculation if the defendant is convicted.  441 F. Supp. 2d at 322.  In light of Remedial <u>Booker</u>, however, when finding facts

19

relevant to Sentencing Guidelines enhancements, the Court also considers the pre-sentence report filed by the Probation Office, and any other information produced by the government or the defendant.  The Court then makes its own, <u>independent</u> finding on the presence or absence of such enhancements instructed by all the information before it, including the results of the jury deliberation.  <u>Id.</u>

The Court's procedure remains consistent with Justice Breyer's opinion in Remedial <u>Booker</u>, interpreting "court" in the Sentencing Reform Act to require "the judge without the jury" to find the facts necessary to an enhancement, rather than "the judge working together with the jury."  543 U.S. at 249.  A jury determination on an enhancement issue is merely advisory and this Court continues to make its own, independent findings on all relevant enhancement facts.  The Court adopted its procedure, in part, because "[t]he Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbors,' rather than a lone employee of the State."  <u>Id.</u> at 238 (quoting <u>Blakely</u>, 542 U.S. at 313-14 (citation omitted)).

By failing timely to object, and indeed by presenting the special question to the Court as the means of determining whether

a mandatory minimum sentence applied, the government accepted the Court's use of the special question to establish the factual foundation for the statutory range and the mandatory minimum and maximum analysis.  See Fed. R. Crim. P. 30(d) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate.").  The government both requested and approved the Court's use of the question for the purpose of determining if the drug quantity triggered a statutory range with a higher mandatory minimum sentence, and the jury found that less than 28 grams of crack cocaine were attributable to Gurley.

The government essentially sought a second bite at the apple by arguing at the sentencing hearing that the jury determination on drug quantity addressed only the statutory maximum issue and was "wholly separate" from the mandatory minimum analysis, disregarding the fact that they constitute a statutory range. The Court concluded that the government had waived any objection to its procedures and their legal effect.  Nevertheless, the Court requested further briefing from the parties on issues regarding the mandatory minimum sentence and ultimately continued the sentencing hearing for several months.  Tr. Sentencing Hr'g 28:6-29:8.

Concluding that the government had waived its objection to this Court's procedures did not, of course, obviate the need to sentence Gurley in accordance with the Sentencing Reform Act and the Sentencing Guidelines.  At this juncture the Court's failure to follow its own procedures came back to bedevil it.  What I should have done, of course, was set out on the verdict form the drug quantity brackets below 28 grams so that I knew what drug quantity the jury had found to support its guilty finding in answer to question one on the verdict slip.[12]

Having failed to do so, the Court first advanced the idea that it was bound to sentence somewhere within the lowest guideline quantity bracket.  The government properly argued that Gurley had been convicted of possession with intent to distribute, rather than mere possession.  <u>Id.</u> at 9:18-10:24. Therefore, the amount could not be negligible, as it would be if the Court found, for example, less than 500 milligrams attributable to Gurley.  <u>Id.</u> at 10:22-24.  The Court next seized on the idea that the 4.29 grams found on the night stand closest to the bed was the proper amount.  The Court's tentative determination was buttressed by defense counsel's statement that a finding of 4.29 grams was "reasonable."  <u>Id.</u> at 16.6-9.  For

---

[12] Candidly, the Court rather cavalierly expected that the jury either would convict across the board (in view of the detailed stipulation), or would acquit and never reach question two on the verdict slip.  This was sloppy and admittedly failed to honor the intelligence of the jury.

the purpose of sentencing, the Court understood defense counsel's
statement as an admission that, were Gurley guilty, he was in
possession with intent to distribute 4.29 grams of crack cocaine.

Upon reflection following the initial hearing the Court
reached the only logical conclusion available: 4.29 grams.  The
evidence showed that 4.29 grams of crack cocaine were found in a
plastic bag on the night stand within arm's reach of where Gurley
was sleeping.  See id. at 11:16-23; Tr. Evidence & Jury Charge
Conference 20:6-12.  The evidence showed that three plastic bags
of crack cocaine, weighing 13.42 grams, 13.55 grams, and .76
grams, were found on top of the dresser.  See Tr. Sentencing Hr'g
12:18-13:19; Tr. Evidence & Jury Charge Conference 20:13-21:6.
All together, the amounts totaled 32.02 grams.  Thus, the Court
reached the only principled conclusion: the drugs on the night
stand immediately adjacent to Gurley, 4.29 grams of crack
cocaine, were attributable to him.[13]

The Court reconvened the parties on March 12, 2012, to
impose a sentence.  Disposition, ECF No. 76.  The Court
determined that the mandatory minimum sentence of ten years did
not apply to Gurley, id. at 2:21-22, and found, that 4.29 grams
of cocaine base was attributable to Gurley, Tr. Sentencing Hr'g

---

[13] In the peculiar circumstances of this case, the standard
of proof applied by the Court is immaterial.  Proof by a fair
preponderance and proof beyond a reasonable doubt both lead to
the same conclusion.

15:6-8.  On this basis, the Court ultimately determined that the applicable base level was sixteen, the criminal history category was two, and the sentencing range was not less than twenty-four months nor more that thirty months.  Disposition 2:23-3:1.  The Court entertained argument on where within the range to sentence Gurley, and imposed a sentence of thirty months, the top end of the guideline range.  Id. at 5:7-12.

## II.  The Statutory and Decisional Framework: The Principle of Juror Lenity

I am a district judge sitting in the First Circuit.  I owe the utmost fidelity to the Acts of Congress, the decisions of the Supreme Court, and those of the First Circuit.  Government waiver aside, I owe a duty to explain that my post-Booker insistence on keeping the jury-front-and-center is fully consonant with the controlling statutes and case law.

The issues presented to this Court are whether the Court "must" apply the ten-year mandatory minimum sentence to the basic sentencing range set out in 21 U.S.C. § 841(b)(1)(C) and whether the principle of juror lenity bears on determinations as to the authorized sentence range.

I answer to the first question in the negative because the statutory range authorized by the jury does not provide for a mandatory minimum sentence.  As to the second question, Supreme Court precedent binds this Court to recognize the principle of

24

juror lenity in determining the applicable sentencing range.  In
doing so, this Court does not abdicate its post-<u>Booker</u>
discretion to decide a just sentence based on a fair
preponderance of the evidence as counseled by the Sentencing
Guidelines.  Rather, this Court endeavors to harmonize the
principle of juror lenity with the jury's recognized authority to
acquit a defendant should a sentencing range appear to it
disproportionate.

    **A.   The Court's Discretion in Sentencing Is Bound by the
Range of Sentencing Options Prescribed by Congress and
the Specific Range Authorized by the Jury**

The first issue is whether a district court is <u>required</u> to
impose a minimum sentence when none is mandated under Section
841(b)(1)(C).

The statutory length of a sentence is dictated by Congress.
<u>United States</u> v. <u>Jones</u>, 674 F.3d 88, 96 (1st Cir. 2012) (noting
that "Congress - which unlike the judiciary is popularly elected
- sets both sentencing policy and the prescribed range of
sentences for federal drug crimes"); <u>see</u> <u>Plumley</u> v. <u>Southern
Container, Inc.</u>, 303 F.3d 364, 374 (1st Cir. 2002) (explaining
that "it is Congress's mission to set the policy of positive
law," whereas a court's role is "to interpret that law").
Congress has the power to enact laws providing for a mandatory
fixed-term sentence, which gives no discretion to the judge to

individualize punishment, or, by contrast, a sentencing range, which does give discretion to the judge to arrive at a fair sentence based on the particular facts of the case.  See Apprendi v. New Jersey, 530 U.S. 466, 481 (2000) (noting that judges' discretion in sentencing "is bound by the range of sentencing options prescribed by the legislature").

Congress has prescribed the sentencing ranges for possession with intent to distribute crack cocaine.  See 21 U.S.C. § 841(b)(1)(C) (providing that a person with a prior conviction and found in possession of any quantity of crack cocaine with intent to distribute shall be sentenced within a sentencing range of zero to thirty years imprisonment); id. at § 841(b)(1)(B) (providing that a person with a prior drug felony conviction and found in possession of 28 grams or more of crack cocaine with intent to distribute shall be sentenced within a sentencing range of not less than ten years to life imprisonment).  The sentencing range under Section 841(b)(1)(C) does not provide for a mandatory minimum sentence.

Here, the government argues that it would be error to refuse to impose on Gurley a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B).  Gov't's Supplemental Sentencing Mem. 11.  The government did not dispute, however, that the jury verdict authorized this Court to sentence Gurley within the statutory range under 21 U.S.C. § 841(b)(1)(C), that is, to a

26

maximum sentence of thirty years.  Id. at 6 ("In this case, the
maximum charge applicable to the Indictment is thirty years,
given the language of 21 U.S.C. § 841(b)(1)(C).").  This Court
had to decide whether it was within its discretion to use two
different statutory ranges when making an independent finding of
drug quantity, and in making its finding, whether that finding
was consonant with the statutory range authorized by the jury's
verdict.

     To determine the applicable sentencing range from the
statutory options prescribed by Congress, the Court and the
government must abide by certain procedural steps.[14]

     The first step: initially determining the applicable
statutory range through indictment sentencing is within the

---

     [14] The procedural steps reflect the evolution of sentencing
doctrine as explained in Harris and Apprendi.  See Harris v.
United States, 536 U.S. 545, 558, 560 (2002); Apprendi, 530 U.S.
at 478-83.  The Supreme Court noted three major sentencing
systems, each which had prevailed over time: originally, criminal
statutes provided a fixed-term sentence, giving no discretion to
the judge at sentencing; in the mid-19th century, there was a
shift towards sentencing ranges, giving judges the discretion to
sentence within the permissible range; and, in the latter part of
the 20th century, there was yet another shift providing for
guidelines and mandatory minimum sentences, implementing measures
regulating judicial discretion within the permissible range.
Apprendi, 530 U.S. at 478-83.  Present sentencing practice is an
amalgam of prior systems.  As stated in Harris: "These systems
maintained the statutory ranges and the judge's fact-finding role
but assigned a uniform weight to factors judges often relied upon
when choosing a sentence."  Harris, 536 U.S. at 558; see, e.g.,
Cunningham, 549 U.S. at 292 (noting that fixed-term sentences are
still in use, "California's Legislature has adopted sentencing
triads, three fixed sentences with no ranges between them").

government's discretion.  Bordenkircher v. Hayes, 434 U.S. 357,
364 (1978).  Under 21 U.S.C. § 841 the government may charge the
basic range or seek enhancements based on the drug quantity and
the existence of a prior felony drug conviction.  Jones, 674 F.3d
at 96-97 ("[T]he prosecution also had discretion in this case to
not seek the mandatory sentence.").  Any enhancement increases
the maximum penalty, thus under Supreme Court precedent, the drug
quantity has to be submitted to the jury and proved beyond a
reasonable doubt.  Apprendi, 530 U.S. at 476 (citing Jones v.
United States, 526 U.S. 227, 243 n.6 (1999)); see Booker, 543
U.S. at 232 (holding that the jury must "find the existence of
'any particular fact' that the law makes essential to [a
defendant's] punishment" (quoting Blakely, 542 U.S. at 301)).

      The decision to prove the quantity enhanced range or the
felony-plus-quantity enhanced range, rather than the basic range,
involves tactical choices for the prosecution.  On the one hand,
an enhanced range requires the government to prove more, and on
the other, proving a quantity of drugs can trigger a minimum
mandatory sentence as well as increase the statutory maximum
sentence.  Compare 21 U.S.C. § 841(b)(1)(B), with id. at §
841(b)(1)(C).  Usually, the verdict slip contains a special
question as to the quantity of drugs for the jury to find
provided they found the defendant guilty.  See, e.g., United
States v. Dickerson, 514 F.3d 60, 63 (1st Cir. 2008) ("A special

verdict form can cure a potential <u>Apprendi</u> problem . . . [and] is used to elicit a specific jury finding on drug quantity and type."); <u>United States</u> v. <u>Gomez-Rosario</u>, 418 F.3d 90, 103 (1st Cir. 2005) (citing <u>Apprendi</u>, 530 U.S. at 490); <u>United States</u> v. <u>Wiggin</u>, 429 F.3d 31, 38-39 (1st Cir. 2005).

The Court must then determine which applicable statutory range conforms with the jury verdict. <u>Apprendi</u>, 530 U.S. at 484 (reiterating the Supreme Court's rulings that "due process and associated jury protections extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence'" (citations omitted)). Because the jury's finding of drug quantity under Section 841(b) triggers the mandatory statutory maximum and minimum sentence, the drug quantity finding, or the absence of such a finding, will guide the judge as to the authorized statutory range. <u>McMillan</u> v. <u>Pennsylvania</u>, 477 U.S. 79, 87-88 (1986) (the statute "operate[d] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it."); <u>accord</u> <u>Harris</u> v. <u>United States</u>, 536 U.S. 545, 563-64 (2002) (confirming the ruling in <u>McMillan</u> which "merely required the judge to impose 'a specific sentence <u>within the range</u> authorized by the jury's finding that the defendant [was] guilty'" (citing <u>Apprendi</u>, 530 U.S. at 494 n.19)); <u>id.</u> at 564 (noting that the "issue [in <u>McMillan</u>] rose from a provision that a judge's finding

29

(by a preponderance) of visible possession of a firearm would require a mandatory minimum sentence for certain felonies, but a minimum that fell <u>within the sentencing ranges</u> otherwise prescribed." (emphasis added) (quoting <u>Jones</u>, 526 U.S. at 242)); <u>see</u> <u>Booker</u>, 543 U.S. at 233 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence <u>within a statutory range</u>." (emphasis added)); <u>Apprendi</u>, 530 U.S. at 482 n.9 (stating that the judge has discretion to pronounce sentence, "yet not to exceed the limits fixed for what crime is within the allegation and the verdict." (quoting 1 J. Bishop, Criminal Law §§ 948 (9th ed. 1923))); <u>id.</u> at 490 ("It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." (quoting <u>Jones</u>, 526 U.S. at 252 (Stevens, J., concurring))); <u>Jones</u>, 526 U.S. at 253 (Scalia, J., concurring) (same).

Therefore, the Court's discretion in sentencing is bound by the sentencing options prescribed by Congress and the specific range authorized by the jury. Here, as the government has conceded, the jury verdict authorized this Court to sentence Gurley within the statutory range of zero to thirty years imprisonment under 21 U.S.C. § 841(b)(1)(C), which range does not provide for a mandatory minimum sentence. Thus, where a drug quantity specified in Sections 841(b)(1)(A) or 841(b)(1)(B) is neither proved to a jury nor admitted by a defendant, a district

court is not <u>required</u> to impose the minimum sentence mandated by those sections even if it <u>may</u> impose that same sentence pursuant to Section 841(b)(1)(C).

> **B.   The Principle of Lenity Applied to Sentencing Ranges**

The second issue is whether a jury's finding that determine the length of the statutory maximum sentence may also signal a finding of a greater or lesser degree of culpability.

In the context of sentencing length, the Supreme Court has recognized that juries may devise "extralegal ways of avoiding a guilty verdict, at least of the more severe form of the offense alleged, if the punishment associated with the offense seemed to them disproportionate to the seriousness of the conduct of the particular defendant." <u>Apprendi</u>, 530 U.S. at 480 (citing <u>Jones</u>, 526 U.S. at 245); <u>id.</u> at 479 n.5 ("This power to thwart Parliament and Crown took the form not only of flat-out acquittals in the face of guilt but of what today we would call verdicts of guilty to lesser included offenses.") (citations omitted).

This recognition is consistent with <u>United States</u> v. <u>Powell</u>. 469 U.S. 57 (1984) (noting the "recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch"). In <u>Powell</u>, a jury acquitted the defendant of drug conspiracy and possession counts, but found the defendant guilty

31

of offenses involving the use of a telephone in "committing and
in causing and facilitating" the alleged conspiracy and
possession.  Id. at 59-60.  This verdict was inconsistent and
Powell appealed.  Id.  Because inconsistent verdicts "may be the
result of [jurors'] lenity, coupled with the Government's
inability to invoke review," the Supreme Court held that "the
best course to take is simply to insulate jury verdicts from
review on this ground."  Id. at 66, 69; see United States v.
Cianci, 378 F.3d 71, 92 (1st Cir. 2004) (refusing to carve out
exceptions to the rule in Powell when jury finds inconsistent
answers in a special verdict form).  In Powell the Court
reasoned:

> It is equally possible that the jury, convinced of guilt,
> properly reached its conclusion on the compound offense,
> and then through mistake, compromise, or lenity, arrived
> at an inconsistent conclusion on the lesser offense.  But
> in such situations the Government has no recourse if it
> wishes to correct the jury's error; the Government is
> precluded from appealing by the Constitution's Double
> Jeopardy Clause.

Powell, 469 U.S. at 65.  Therefore, a "jury verdict [which] is
internally inconsistent . . . is essentially unreviewable."
United States v. Alicea, 205 F.3d 480, 484 (1st Cir. 2000)); see
Powell, 469 U.S. at 66; Dunn v. United States, 284 U.S. 390, 393-
94 (1932); United States v. Lara, 181 F.3d 183, 206 (1st Cir.
1999)).

The First Circuit has upheld jury verdicts that implicate a

lesser degree of culpability in the context of drug quantity enhancements.  Gomez-Rosario, 418 F.3d at 104-05.  In Gomez-Rosario, the defendant was charged with conspiracy to possess approximately 975 grams of heroin.  Id. at 104.  The jury found the defendant guilty, yet also found on the special verdict form that the conspiracy involved "less than 100 grams of heroin." Id.  In light of the inconsistency, the defendant appealed, arguing that the special question allowed the jury to consider an uncharged conspiracy, which involved less than 100 grams of heroin.  Id.  The First Circuit was not persuaded by this argument and reasoned that it is "not erroneous per se to allow a jury to find that a defendant is guilty of the crime charged but responsible for a lesser quantity of drugs than that specified in the indictment."  Id. at 105 (citing United States v. Ruiz Solorio, 337 F.3d 580, 589-91 (6th Cir. 2003)).  Therefore, the First Circuit held that "the special verdict form left room for the jury" to find that the defendant "participated in the charged conspiracy but to limit his responsibility to a lower amount." Id.  In other words, the resulting verdict imposed a lesser degree of culpability authorized, limiting the defendant's responsibility to a lower amount for sentencing purposes.

In the case at hand, Gurley was convicted of possession with intent to distribute, rather than mere possession.  Tr. Sentencing Hr'g 9:18-10:24.  The jury verdict, however,

33

exculpated Gurley from any drug amount above 28 grams; therefore, the only drugs which could reasonably be attributable to Gurley under the jury verdict are those found on the night stand within his arm's reach where he was sleeping, id. at 11:16-23, or in the alternative, a negligible amount, id. at 10:22-24.  The jury verdict is, of course, consistent with a mere drug possession charge, a charge upon which he was not indicted, rather than the possession with intent to distribute charged by the government.

This Court does not need to resolve this inconsistency in the jury verdict.  The jury found a "lower amount," less than 28 grams, thus, limiting Gurley's culpability to the basic range with a zero to thirty year statutory range.  See Gomez-Rosario, 418 F.3d at 104-05.  Furthermore, in light of Powell and First Circuit law, this Court is bound to assume that the jury sought lenity for Gurley, and "the punishment associated with the offense seemed to them disproportionate to the seriousness" of Gurley's conduct.  Apprendi, 530 U.S. at 480.  The result of Gurley's acquittal of the more than 28 gram drug enhancement is "the Government's inability to invoke review," Powell, 469 U.S. at 66, or "otherwise upset[] such an acquittal," id. at 65, and the Court is bound by the Supreme Court's holding that "the best course to take is simply to insulate jury verdicts from review on this ground," id. at 69.

34

Therefore, applying the principle of juror lenity, this Court is authorized by the jury verdict to apply the basic range of zero to thirty years; the jury having acquitted Gurley of the felony-plus-drug range with its mandatory minimum of ten years up to a maximum of life in prison.

C.   **The Court Cannot Combine Two Different Statutory Ranges When the Jury Verdict Authorized Only the Basic, While Acquitting Gurley of the Enhanced Felony-Plus-Quantity Range**

The government is essentially asking this Court to use its judicial discretion to choose to keep the statutory maximum of thirty years (from the basic range of zero to thirty years under 21 U.S.C. § 841(b)(1)(C)), while imposing a ten-year mandatory minimum sentence from another statutory range (the felony-plus-quantity range of ten years to life in prison under 21 U.S.C. § 841(b)(1)(B)).  Gov't's Supplemental Sentencing Mem. 6, 15. Under the very extraordinary factual circumstances presented here, this approach would contradict <u>Harris</u> and allow the Court to sentence from a composite range authorized by neither the statute or the jury verdict.

As a matter of statutory interpretation, a "sentencing range" is a measure of time within specified limits in which a penalty can be imposed, viz., a length of time within a minimum and a maximum number of years.  <u>See, e.g.</u>, <u>United States</u> v. <u>Colon-Torres</u>, 382 F.3d 76, 80 (1st Cir. 2004).  The statutory

35

ranges under Section 841(b) are defined in separate subsections
and they have been construed as constituting different statutory
ranges.  Compare 21 U.S.C. § 841(b)(1)(B), with id.
§ 841(b)(1)(C).  The statutory ranges "operate as unified and
independent wholes."  Gonzalez, 420 F.3d at 115-16.  In other
words, the minimum and maximum of the statutory range are not
independent variables unless the statute allows it.  See Harris,
536 U.S. at 550-51.  In the context of Section 841(b), the drug
quantity simultaneously triggers both a mandatory maximum and
minimum.  21 U.S.C. § 841(b).

Here, the propriety of submitting the drug quantity to the
jury is not in dispute.  Gov't's Supplemental Sentencing Mem. 6
("As was noted in the government's original sentencing
memorandum, the quantity of drugs which establishes the maximum
term of imprisonment is determined by the jury.").  Because
Gurley was exposed to a penalty exceeding the statutory maximum
sentence for the basic range, and any higher sentence was
contingent on a finding that he possessed 28 grams of crack
cocaine with intent to distribute, this fact "must be found by a
jury beyond a reasonable doubt."  Ring v. Arizona, 536 U.S. 584,
602 (2002); Derman v. United States, 298 F.3d 34, 42 & n.4 (1st
Cir. 2002) (finding that Apprendi error had occurred where court
did not ask the jury to determine beyond a reasonable doubt
whether underlying conspiracy involved a drug quantity sufficient

to trigger a sentence higher than the five year statutory
maximum).

The First Circuit, however, has declined to hold that
sentencing factors are elements of the crime for purposes of
Section 841(b).[15]  Goodine, 326 F.3d at 28; see also United

_____

[15] There is a Circuit split on this issue.  In Gonzalez, the
Second Circuit concluded:

> The sentencing ranges prescribed in § 841 for aggravated
> drug offenses may not be deconstructed so that quantity
> operates as an element for purposes of determining an
> applicable maximum but as a sentencing factor for
> purposes of determining an applicable minimum.  Thus,
> where a drug quantity specified in § 841(b)(1)(A) or -
> (b)(1)(B) is neither proved to a jury nor admitted by a
> defendant, a district court is not required to impose the
> minimum sentence mandated by those sections even if it
> may impose that same sentence pursuant to § 841(b)(1)(C).

Gonzalez, 420 F.3d at 134.  The Third Circuit has expressed a
similar opinion.  United States v. Vazquez, 271 F.3d 93, 113-14
(3rd Cir. 2001) (en banc) (Becker, C.J., concurring) ("It strains
credulity, however, to assert that Congress [simply to avoid an
Apprendi violation] intended for type and quantity to be treated
as sentencing factors in some cases and as elements in others.  I
know of no statute written in such a manner, nor am I aware of
any statutes construed this way," and then noted that "Congress
enacted the most recent relevant structural changes to § 841 in
1986; the Supreme Court issued its Apprendi decision just last
year [2000].").
     In United States v. Aitoro, 446 F.3d 246, 257 (1st Cir.
2006), the First Circuit acknowledged that "Goodine's approach
has been rejected elsewhere, see, e.g., United States v.
Gonzalez, 420 F.3d 111 (2d Cir. 2005); United States v.
Velasco-Heredia, 319 F.3d 1080 (9th Cir. 2003); see also United
States v. Vazquez, 271 F.3d 93, 107-26 (3d Cir. 2001) (en banc)
(Becker, J., concurring), but it is the law of this circuit."
The First Circuit noted, however, that Aitoro was not the
appropriate case in which to revisit Goodine in light of Booker
because Aitoro's sentence was not subject to a mandatory minimum.
Id.  This issue was revisited in United States v. Lizardo, 445
F.3d 73, 90 n.11 (1st Cir. 2006) (recognizing that "circuits are

States v. Malouf, 466 F.3d 21, 26 (1st Cir. 2006); United States v. Lizardo, 445 F.3d 73, 90 (1st Cir. 2006).  But see Washington v. Recuenco, 548 U.S. 212, 220 (2006) (Thomas, J., joined by Roberts, Scalia, Kennedy, Souter, Breyer, and Alito, JJ.,) (holding that "the Court has treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt").

In the First Circuit, drug quantity under Section 841(b) is a factor for the purpose of determining the mandatory minimum sentence.  Here, however, the distinction between factor and element is irrelevant at this point of the Court's analysis because under Section 841(b) drug quantity determines both the minimum and the maximum statutory range.  Goodine, 326 F.3d at 33 ("Apprendi's limitation on punishment beyond the statutory maximum applies regardless of whether the fact is considered an 'element' or a 'sentencing factor.'" (citing Harris, 536 U.S. at 576)); accord Harris, 536 U.S. at 576-577 ("The legislature is free to decree, within constitutional limits, which facts are elements that constitute a crime," however, "[t]his

---

split as to whether judicially found facts can be used to increase the statutory mandatory minimum sentence under § 841(b)(1)").  The First Circuit has also seen fit to distinguish the persuasive reasoning in the Second Circuit's Gonzalez decision.  United States v. Yeje-Cabrera, 430 F.3d 1, 13 (1st Cir. 2005) (noting that defendant "overreads Gonzalez," the holding of which "at best supports a conviction on a lesser, unquantified drug charge, whose sentencing range is prescribed by § 841(b)(1)(C)." (quoting Gonzalez, 420 F.3d at 115)).

constitutional limitation neither interferes with the legislature's ability to define statutory ranges of punishment nor calls into question judicial discretion to impose 'judgment within the range prescribed by statute.'" (citing Apprendi, 530 U.S. at 481)).

Therefore, this case is distinguishable from Goodine and its progeny. In Goodine, the defendant raised an Apprendi challenge, arguing that the mandatory minimum sentence exceeded the sentencing guideline range. 326 F.3d at 27. The court reasoned that the top end of the sentencing guidelines range was not the equivalent of the statutory maximum, id. at 33, therefore, where the top of the statutory range exceeds the guidelines range, then the statute overrides the guidelines, id. at 33-34 (citing 18 U.S.C. Appx. § 5G1.1 (2002)).

Here, this Court is not presented with an issue of whether the drug quantities under Section 841(b) are elements or sentencing factors, or whether the statutory range exceeds the Sentencing Guideline's range. Rather, this Court had to untangle the issue where the jury has partially acquitted Gurley by entering a verdict for a lesser statutory sentencing range than the range sought to be proved by the government.

The issue in Gurley's case does not involve the Sentencing Guidelines at all. The facts of Gurley's case are also distinguishable from Goodine because, in Goodine, the judge's

39

finding did not simultaneously alter the maximum and minimum penalty.  The jury found that Goodine possessed at least five grams of drugs, but less than fifty grams.  <u>Id.</u> at 27-28.  Due to the defendant's prior record of conviction, he faced a range of ten years to life in prison under Section 841(b)(1)(B).  <u>Id.</u>  The judge determined, however, that Goodine was responsible for 309.2 grams of drugs, which triggered a sentence of twenty years to life in prison under Section 841(b)(1)(A).  <u>Id.</u>  There, switching between Sections 841(b)(1)(B) and 841(b)(1)(A) did not alter the statutory range authorized by the jury.  <u>Id.</u> at 27 ("Goodine was not sentenced to a penalty greater than that authorized by the jury's findings."); <u>see</u> <u>id.</u> at 31 ("[A] switch from 841(b)(1)(B) to 841(b)(1)(A) does not affect the 'substance' of the charge." (quoting <u>United States</u> v. <u>Eirby</u>, 262 F.3d 31, 38 (1st Cir. 2001)); <u>Eirby</u>, 262 F.3d at 38 (noting that "the switch did not usurp the prerogative of the grand jury").  There, the First Circuit affirmed Goodine's sentence because it was within the statutory range set by the jury.  <u>Goodine</u>, 326 F.3d at 34.

<u>Goodine</u>'s holding, however, does not help this Court to solve the issue in Gurley's case.  Here, a switch between Sections 841(b)(1)(B) and 841(b)(1)(C) does indeed disrupt the jury verdict and the statutory range, because the Court is asked to use its discretion to combine the mandatory minimum of one statutory range while using the authorized mandatory maximum of

40

another.  This switch usurps the prerogative of the jury to authorize the applicable statutory range since the jury acquitted Gurley of the application of the felony-plus-quantity range.[16] See Eirby, 262 F.3d at 38.

McMillan and Harris are distinguishable from the case at hand as well.  In McMillan, the statute did not "alte[r] the maximum penalty for the crime" but "operate[d] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it."  McMillan, 477 U.S. at 87-88. Similarly, Harris was a jury waived trial where the statute in question altered only the minimum and authorized incorporating the sentencing minimum (but not a maximum) into the statutory range.  536 U.S. at 550-51.  All statutory minimums were incorporated by statute within the same "life in prison" maximum, thus the judge's finding did not alter the maximum in any way.

---

[16] The decision in Lizardo, 445 F.3d at 89-90, is a closer call, yet distinguishable.  There, the First Circuit analyzed the reverse of the situation presented in Gurley's case.  The government charged Lizardo to the basic range under 21 U.S.C. § 841(b)(1)(C) and the jury brought in a guilty verdict authorizing a sentence ranging from zero to twenty years.  Id. at 89.  The judge sentenced Lizardo above the Sentencing Guidelines range to five years imprisonment taking into consideration the mandatory minimum in Section 841(b)(1)(B).  Id.  Nothing in Lizardo suggests that a district court is required to impose the minimum sentence mandated by those other statutory ranges even if it may impose that same sentence pursuant to Section 841(b)(1)(C). Unlike Gurley's case, the jury in Lizardo was not asked about a drug quantity that would enhance the sentencing range and the verdict did not acquit Lizardo of the enhanced range.  Thus, the judge's sentence in Lizardo did not disrupt the authorized sentencing range based on the verdict.  Id.

Id.  The statutes in McMillan and Harris are distinguishable,
therefore, because they do not create a statutory range different
from the range authorized by the jury verdict.  In this respect,
the Supreme Court carefully carved out the distinction between
Harris and Apprendi.  Harris, 536 U.S. at 566 (noting that in
each case the facts increasing the minimum sentence were distinct
from the facts extending the mandatory maximum).  Conversely, in
Gurley's case, the same fact (whether 28 grams of crack cocaine
were attributable to Gurley) triggers simultaneously both the
minimum and the maximum, changing the range authorized by the
jury.  The Supreme Court in Harris made it clear that it is not
the function of the judge to establish the applicable statutory
range authorized by the jury verdict.  Harris, 536 U.S. at 565
("The judge may impose the minimum, the maximum, or any other
sentence within the range without seeking further authorization
from those juries - and without contradicting Apprendi.").

     Here, imposing a mandatory minimum in disregard of the
jury's verdict that authorized only a lower sentencing range
(without such a mandatory minimum), would encroach upon the
historical role of the jury to authorize the sentencing range.
Furthermore, foreclosing the jury's power to acquit of a greater
and drop down to a lesser offence under the principle of juror
lenity would raise a constitutional issue because it is a "threat
to the jury's domain as a bulwark at trial between the State and

42

the accused." <u>Oregon</u> v. <u>Ice</u>, 555 U.S. 160, 170 (2009) ("[T]he scope of the constitutional jury right must be informed by the historical role of the jury at common law."); <u>Booker</u>, 543 U.S. at 233 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); <u>Powell</u>, 469 U.S. at 65 (noting the "recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch").

In conclusion, the application of the mandatory minimum in this case is inappropriate because it erodes the jury's traditional role to establish the sentencing range.  In this particular case, the jury verdict would be disrupted, were the Court to impose a ten year sentence as a mandatory minimum because the jury acquitted Gurley of the felony-plus-quantity enhanced sentencing range.

### D.   Constitutional Avoidance - Double Jeopardy

To ignore the facts found by the jury beyond a reasonable doubt regarding the quantity of drugs attributable to Gurley would also raise serious double jeopardy concerns.

The Double Jeopardy Clause of the Fifth Amendment provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.

For purposes of the Double Jeopardy Clause, jeopardy attaches in a jury trial when the jury is impaneled and sworn.  United States v. Toribio-Lugo, 376 F.3d 33, 38 (1st Cir. 2004).

The Supreme Court has held that the Double Jeopardy Clause does not apply at the sentencing stage in a criminal prosecution when a defendant's precise punishment is determined.  Monge v. California, 542 U.S. 721, 728 (1998); see also United States v. Watts, 519 U.S. 148, 155 (1997) (holding that sentence enhancements are not construed as additional punishment for the previous crime of which the defendant was not convicted; rather, they act to increase a sentence "because of the manner in which [the defendant] committed the crime of conviction"); Witte v. United States, 515 U.S. 389, 403-404 (1995) (holding that the Double Jeopardy Clause did not bar a prosecution for conduct that had provided the basis for an enhancement of the defendant's sentence in a prior case).  But see Witte, 515 U.S. at 407 (Scalia, J., concurring) (noting that there is "no real difference" between "punishing twice for the same offense" and "punishing twice as much for one offense" solely because the defendant also committed another offense, for which the defendant will also be punished).

In Constitutional Booker the Supreme Court briefly addressed the Double Jeopardy Clause and recognized that "[i]n neither Witte nor Watts was there any contention that the sentencing

44

enhancement had exceeded the sentence authorized by the jury verdict . . . ."  543 U.S. at 240.  In fact, whether the jury verdict authorized the felony-plus-quantity enhancement resulting in an increase of the sentencing range is the exact issue with which the Court deals in this case.  Here, the jury was presented with a choice between two alternatives together with standards to guide their decision.  The facts found by the jury beyond a reasonable doubt make clear that the amount of crack cocaine properly attributable to Gurley did not exceed 28 grams.

"Yet once the jury finds all those facts, Apprendi says that the defendant has been convicted of the crime; the Fifth and Sixth Amendments have been observed; and the Government has been authorized to impose any sentence below the maximum." Harris, 536 U.S. at 565.  In other words, the sentence ought remain within the outer limits established by the jury verdict.  Were the Court now to ignore the jury finding and itself to find that the amount of crack cocaine attributable to Gurley exceeds 28 grams, it would subject Gurley to a different statutory range than the one authorized by the jury verdict and would constitute an aggravated offense as compared with the offense found by the jury.  In light of the jury finding and the heightened procedural protection that necessarily accompanies it, this Court thus determines the Gurley sentencing is distinguishable from traditional sentencing, where double jeopardy provision generally

does not apply.  See Schiro v. Farley, 510 U.S. 222, 231 (1994).

Ignoring the limits of punishment established by the jury verdict

would constitute a violation of the Double Jeopardy Clause.  See

Booker, 543 U.S. at 240; see also Carissa Byrne Hessick & F.

Andrew Hessick, Recognizing Constitutional Rights at Sentencing,

99 Cal. L. Rev. 47, 59 (2011) (arguing that the principle behind

the Double Jeopardy Clause is to prevent multiple attempts to

punish for the same conduct).

This Court is well aware of the First Circuit's holding that

"drug quantity for purposes of § 841 is a sentencing factor."

Goodine, 326 F.3d at 32.  This case, however, presents a unique

instance where, were the Court to find that the amount of crack

cocaine attributable to Gurley exceeded 28 grams, as the

government urged, he would be transported into a different

statutory sentencing range.  In Harris, the Supreme Court

explained that "McMillan and Apprendi mean that those facts

setting the outer limits of a sentence, and of the judicial power

to impose it, are elements of the crime for the purposes of the

constitutional analysis," Harris, 536 U.S. at 567.[17]  Thus, in

the unique circumstances of this case, following the rationale of

Apprendi, and for the purposes of the constitutional analysis

only, the Court considers the drug quantity attributable to

---

[17] Harris "remains good law after Blakely and Booker" in the
First Circuit.  Malouf, 466 F.3d at 27.

Gurley an element of the crime.  Because once the jury finds the elements of the crime, <u>Apprendi</u> holds that the defendant has been convicted of that crime, for a judge then to arrogate to himself the fact-finding function and possibly to find the same element to an aggravated degree by a preponderance of evidence and thus find the defendant guilty of a different crime would constitute a double jeopardy violation.

## III. Conclusion

For these reasons, on March 12, 2012, the Court resumed the sentencing hearing, "determined that the mandatory minimum does not apply," Disposition at 2:21-22, and sentenced Gurley to the high end of the applicable guideline - thirty months.

As in any opinion, I have tried - truthfully and accurately - to explain the reasons for the choices I have made.  As I pulled this opinion together, however, I was swept with the realization that all this intricate reasoning has but a single goal - the preservation of the direct democracy of the American people through upholding and giving effect to the verdict of one of its juries.  It ought not be this complex.  Why do it?

This single opinion - narrow and unimportant as it is in the grander scheme of things - may serve as a buoy or failed sea anchor to mark how far we have drifted as a nation from the

magnificent conception of the jury given us by the framers.[18]
"[A] criminal judge sitting without a criminal jury was simply
not a duly constituted federal court capable of trying cases,
just as the Senate sitting without the House was not a duly
constituted federal legislature capable of enacting statutes."
Akhil Reed Amar, <u>America's Constitution: A Biography</u> 236 (2005);
<u>see</u> Jackie Gardina, <u>Compromising Liberty: A Structural Critique
of the Sentencing Guidelines</u>, 38 U. Mich. J. L. Reform 345, 377
(2005); Roger Roots, <u>The Rise and Fall of the American Jury</u>, 8
Seton Hall Cir. R. 1, 2-4 (2011).  <u>But see</u> Recent Case, 125 Harv.
L. Rev. 1860 (2012).  As Thomas Jefferson said so aptly: "I
consider [trial by jury] as the only answer ever yet imagined by
man, by which a government can be held to the principles of its
constitution."  Letter from Thomas Jefferson to Thomas Paine
(July 11, 1789), <u>in</u> 7 The Writings of Thomas Jefferson 404, 408
(Albert Ellery Bergh ed. 1907).

---

[18] Alexander Hamilton wrote in the Federalist Papers as
Publius:

> The friends and adversaries of the plan of the
> convention, if they agree in nothing else, concur at
> least in the value they set upon the trial by jury; or if
> there is any difference between them it consists in this:
> the former regard it as a valuable safeguard to liberty;
> the latter represent it as the very palladium of free
> government.

The Federalist No. 83.

Today, however, we have marginalized the American jury as never before in the history of the republic.  Actual fact-finding rarely occurs, so a jury is rarely needed.  See George Fisher, Plea Bargaining's Triumph, 109 Yale L.J. 857 (2000).  Instead, we have a criminal justice system so rife with charge - and fact-bargaining that the public correctly suspects it has abandoned its quest for "the whole truth."  See William Stuntz, The Collapse of American Criminal Justice (2011).[19]

_____

[19]

    For Stuntz, the great majority of federal criminal law is a monstrosity.  Long ago unmoored from any sensible focus on intrinsically bad acts and uncontroversially necessary federal jurisdiction, it now is not only the worst offender among modern criminal regimes, but also the perverse model for and even enabler of parallel excesses at the state level. . . .  We have a maze-like, incoherent tangle of penal laws.  Their mens rea components are so formulaic as to deny juries any chance of exercising any moral judgment about meaningful blameworthiness (pp. 260-62).  The complexity and overlap of these penal laws, especially given the generosity that double jeopardy doctrine displays toward multiple punishments of single transactions, converts prosecutorial discretion from an exercise of wisdom to a selection of weaponry (p. 81).  And the rigidity of the penal laws' sentencing scheme, while now in flux because of United States v. Booker, nevertheless makes federal sentencing law the prime example of the power shift in sentencing from judge to prosecutor (p. 295).
    Stuntz is appalled at the dishonesty of these shortcuts and their smooth entry into the DNA of American criminal law doctrine.

Robert Weisberg, Crime and Law: An American Tragedy, 125 Harv. L. Rev. 1425, 1445 (2012) (reviewing William J. Stuntz, The Collapse of American Criminal Justice (2011)).

And what of federal trial judges?  Has sending the jury to the sidelines enhanced their moral authority?  Brought them to the forefront of criminal case adjudication?  Just the reverse. Without juries, judges find their role deconstructed, reduced to little more than insuring that plea procedures are followed and then imposing a largely pre-determined sentence.  See Brock Hornby, The Business of the U.S. District Courts, 10 Green Bay 2d 4535 (2007).

Prosecutors run our federal criminal justice system today. Judges play a subordinate role - necessary yes, but subordinate nonetheless.  Defense counsel take what they can get.

Perhaps sensing the diminishing role of judges and juries, Congress, acting under article I, has created a host of "judges" to assist the Executive in implementing Congressional mandates. Today, we have administrative law "judges," immigration "judges," military judges, and the like.

Yet, alone among this plethora of perhaps more biddable public officers, only the 678 United States District Judges (and their Senior Judge colleagues) can summon an American jury and call it to its constitutional duty.  If we district judges do not defend the American jury at every turn, if we are no longer imbued with the wonder and majesty of direct democracy in action, then truly we have slipped our anchor and are drifting toward a dark and not so distant shore whose contours are beginning to

appear.[20]  <u>See</u> Editorial, <u>The Road We Need Not Have Traveled</u>, N.Y. Times, Apr. 8, 2012, at  10.

It is inexpressibly sad.

    /s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[20] Or, in Judge Patrick Higginbotham's inimitable phrase, the federal trial courts become "indistinguishable from state highway departments."  Patrick Higginbotham, <u>The Present Plight of the United States District Courts: Is the Managerial Judge Part of the Problem or the Solution?</u>, 60 Duke L.J. 745, 762 (2010).